UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JOHN PHILIP ROSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                                       ) | CV420-012 |
| ) | |
| KILOLO KIJAKAZI,[1]         ) | |
| ) | |
| Defendant.                       ) | |

## REPORT AND RECOMMENDATION

Plaintiff John Philip Ross seeks judicial review of the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB).

## I.   GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of the Commissioner of Social Security). The Clerk of Court is **DIRECTED** to update the caption accordingly.

1

> the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). *see also Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) ("Substantial evidence . . . is 'more than a mere scintilla.' [Cit.] It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (citations omitted)). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of

> impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[2] to perform her past relevant work. Id. § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II.  ANALYSIS

Ross, who was 29 years old when his DIB claim was denied, alleges disability beginning on November 1, 2015. Tr. 76. He has a high school education and past work experience as a receptionist, a rental car porter, a line cook, a laborer, and in the United States Army. Tr. 189. After a

---

[2] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to his past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

3

hearing, tr. 26-75, the ALJ issued an unfavorable decision, tr. 7-21. He found that Ross's lumbar spine degenerative disc disease, cervical spine degenerative disc disease status-post fusion, planter fasciitis, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), and obesity constituted severe impairments, but did not meet or medically equal a Listing. Tr. 12-15. The ALJ thus found that Ross retained the RFC for sedentary work except

> . . . [h]e can lift/carry 20 pounds occasionally and 10 pounds frequently. He can push/pull up to 10 pounds occasionally. The claimant could stand and/or walk up to 4 hours in an 8-hour workday, and sit for 6 hours in 8-hour workday with normal breaks. He can occasionally climb ramps and stairs, but never climb ladders or scaffolds. He can frequently balance and occasionally stoop, kneel, crouch and crawl. He can occasionally reach overhead and use foot controls. The claimant should avoid concentrated exposure to vibrations, wetness, loud background noises, unprotected heights and other hazards. The claimant can perform simple, routine work involving simple, work-related decisions with few, if any, workplace changes. He can occasionally interact with supervisors, coworkers and the public.

Tr. 15. Ross, he determined, could not perform his past relevant work, but could perform jobs that existed in significant numbers in the national economy. Tr. 20-21.

Ross disagrees, arguing that the ALJ erred by not considering evidence that he had severe handgrip weakness prior to an August 2,

2019 cervical fusion, and whether this pre-surgery weakness mandated a finding of a closed period of disability. Doc. 13 at 1, 4. Ross further argues that the ALJ erred by failing to address his post-surgery limitations on manipulation and including them in the RFC determination. *Id.* at 3-4; doc. 15 at 1. He contends the ALJ improperly relied on his surgeon's discharge instructions in determining his post-surgery functional limitations. Doc. 13 at 4.

An ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence, 20 C.F.R. §§ 416.927(d)(2), 946(c), based on the entire record, 20 C.F.R. §§ 404.1520a (evaluation of mental impairments), 416.945(a)(3) (the RFC is based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical sources, as well as witness testimony). The RFC represents the most a claimant can do despite his limitations, SSR[3] 96-8p, and it is the ALJ's responsibility (and not any doctor's) to assess the RFC based on the record as a whole. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir.

---

[3] Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). SSRs are entitled to deference, but are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

2010) ("the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctor's."); see 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) (the ALJ has the responsibility for determining a claimant's RFC). And the ALJ can distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record").

Ross first argues that the ALJ "specifically noted and apparently relied upon" his neurosurgeon's notes and opinion regarding his handgrip weakness prior to an August 2019 surgery, but failed to determine whether this pre-surgery handgrip weakness rendered him disabled prior to the surgery. Doc. 13 at 8. Ross contends that the ALJ's discussion of the neurosurgeon's post-surgery instructions implied the

determination that the surgery "fixed this functional limitation." *Id.* This implication leaves, to Ross, an "open issue" whether he was disabled by the severed handgrip weakness from November 1, 2015 up through recovery from the August 2019 surgery. *Id.*

Ross next argues that the ALJ did not review his functional limitations post-surgery period. *Id.* at 9. He contends that the neurosurgeon's restrictive instructions do not contain any opinion at all about functional limitations that do or do not persist following that surgery, and that his own testimony is that the functional limitations did persist. *Id.*

Ross testified during the hearing that he has issues "grasping and holding on to things" because of numbness in his lower arm and fingers. Tr. 55, 64. While he testified that this numbness causes him to drop things, tr. 64, he also testified that, while paying close attention, he can hold some things for 15-20 minutes, tr. 65. He has trouble holding on to things that are heavier than 15 pounds for more than a minute. Tr. 65. He further testified that his August 2019 fusion did not help with this numbness, and he expected that his condition would remain, although the surgery should mitigate against any further damage. Tr. 66.

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

The ALJ acknowledged Ross's testimony that, post-surgery, "he must take care when lifting things and has to do it in small increments. He has to plan things in advance to avoid too much lifting . . . ." Tr. 16. In considering Ross's discussion of all of his symptoms, the ALJ determined that "[his] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* In making this determination, he found that Ross's statements about the intensity, persistence, and limiting effects of his

symptoms were inconsistent with the medical evidence. *Id.*

Relative to Ross's symptoms of numbness and weakened grip strength, the ALJ considered the evidence in the record by citing to Ross's medical records where hand and arm numbness was indicated. *See* tr. 18 (citing Exhibit 11F, tr. 1536, noting Ross's complaints of bilateral arm numbness). He specifically considered Ross's handgrip weakness pre-surgery in discussing his rationale for the RFC. Tr. 18 (citing Exhibit 11F, tr. 1536, which indicates that Ross "[has] severe hand grip weakness").[4] He acknowledged that Ross had a weakened left grip (4+/5) during a physical examination in April 2019. Tr. 18. He did not, as Ross suggests, make a finding, by implication or otherwise, that the surgery "fixed" the weakened grip. Instead, the ALJ acknowledged the restrictions placed on Ross post-surgery, which included restrictions on lifting and pushing and pulling. Tr. 18-19. The ALJ also considered the evidence regarding Ross's ability to "perform household chores, laundry, drive . . . prepare[ ] meals for himself. . . take care of his personal hygiene,

---

[4] The Commissioner correctly points out that the ALJ considers a "judgment about the nature and severity of [a claimant's] impairment" as "other medical evidence," which is not subject to the rules governing the consideration of medical opinions. *See* 20 C.F.R. § 404.1513(a)(3); *compare* 20 C.F.R. § 1520c (providing rules for considering medical opinions). Ross appears to concede the issue. *See* doc. 15 at 3, n. 3.

watch television, [and] shop in stores. . . ." Tr. 20.

In formulating Ross's RFC, the ALJ placed limitations on lifting and carrying, pushing and pulling, and reaching.  Tr. 15.  Based on Ross's own testimony, even with numbness in two fingers, he is able to lift or carry some things, so long as they aren't too heavy.  Tr. 65.  The ALJ's determination of plaintiff's RFC was, therefore, supported by substantial evidence.

### III.  CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Therefore, **within 14 days from the date of this order**, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 1st day of September, 2021.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA